UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN VILLARREAL, AGUSTIN BENITEZ, CARLOS MORALES,<br><br>Plaintiffs,<br><br>v.<br><br>PERFECTION PET FOODS, LLC,<br><br>Defendant. | 1:16-cv-01661-LJO-EPG<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT DEFENDANT'S MOTION TO COMPEL ARBITRATION BE GRANTED<br><br>[ECF No. 14]<br><br>OBJECTIONS, IF ANY, DUE WITHIN 14 DAYS |

## I.  BACKGROUND

Plaintiffs Steven Villarreal, August Benitez, and Carlos Morales are former employees of Defendant Perfection Pet Foods, LLC ("PPF"), a California limited liability company and pet food manufacturer. Plaintiffs filed this case November 2, 2016 and subsequently filed the First Amended Complaint on January 10, 2017. (ECF Nos. 1, 11.) It is alleged that PPF violated California labor law by requiring its non-exempt hourly employees to work twelve hour shifts, and failing to provide those employees with proper meal and rest periods. Plaintiffs bring five class claims seeking unpaid wages, premium wages for missed and/or non-compliant meal and rest periods, interest, and derivative penalties. In addition, Plaintiffs bring a claim under the California Labor Code Private Attorneys General Act ("PAGA"), and Plaintiff

Villarreal has brought an individual claim for violation of the Family and Medical Leave Act of 1993 ("FMLA").

On February 7, 2017, PPF filed a motion to compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq*. (ECF No. 14.) PPF asserts that all three Plaintiffs agreed to arbitrate employment disputes with PPF, and it requests that the Court to enforce the arbitration agreements. Plaintiffs filed a response in opposition to the motion (ECF No. 17), and PPF has filed a reply in support (ECF No. 18).

The motion to compel arbitration is currently before the undersigned judge for findings and recommendations to the district judge on the parties' briefs and following oral argument, which was held on March 24, 2017. (ECF No. 19.)

**II.     REMAINING ISSUES**

Upon the completion of briefing on the motion to compel arbitration, the following issues were presented: 1) whether all three Plaintiffs agreed to binding arbitration; 2) whether the arbitration agreement is unconscionable; 3) whether the Private Attorneys General Act ("PAGA") claim is arbitrable; and 4) whether the arbitration agreement contains an enforceable class action waiver.

The Court heard oral argument concerning all four issues in the motion hearing on the motion to compel arbitration on March 24, 2017. The hearing revealed that the parties were in agreement as to many of these issues.

As to the second issue regarding whether the arbitration agreement is unconscionable, it was acknowledged that California law concerning unconscionability of a contract requires both a procedural and a substantive element. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 340, 131 S. Ct. 1740, 1746, 179 L. Ed. 2d 742 (2011) (citations omitted). Furthermore, the procedural element focuses on oppression or surprise due to unequal bargaining power, whereas the substantive element focuses on overly harsh or one-sided results. *See id*. At the motion hearing, PPF acknowledged unequal bargaining power in that persons seeking employment with PPF were required to accept the arbitration agreement was a "take it or leave

it" situation. PPF contended that Plaintiffs could not demonstrate substantive unconscionability.

Plaintiffs briefing set forth two bases for substantive unconscionability: 1) there was no requirement in the arbitration agreement for the arbitrator to issue a written decision; and 2) there was a pre-arbitration mediation requirement. As to the written decision argument, PPF responded that the arbitration agreement requires that the any arbitration be conducted in accordance with the rules of the California Arbitration Act ("CAA"), and § 1283.4 of the CAA requires the arbitrator to issue a written decision. (ECF No. 18, p. 4.) As to the mediation argument, PPF responded that the arbitration agreement does not require pre-arbitration mediation. (*Id*., pp. 4-5.) At the hearing, Plaintiffs agreed that the CAA would require a written decision. Additionally, Plaintiffs described the dispute regarding mediation as an "absence of evidence" issue. Plaintiffs' brief conceded that it was not clear whether the employee handbook requires pre-arbitration mediation. (ECF No. 17, p. 13.) PPF's reply quoted the relevant section of the employee handbook that expressly states that mediation is not required before a employment dispute is submitted to arbitration. (*Id*., pp. 4-5.) Accordingly, there was no remaining dispute to either element of the Plaintiffs' unconscionability argument: 1) the procedural element was satisfied, but 2) the substantive element is not satisfied. Accordingly, Plaintiffs cannot invalidate the arbitration agreement on the basis of unconscionability.

Next, the third issue concerning the arbitability of the PAGA claim was resolved when Plaintiff conceded that current Ninth Circuit caselaw indicates that PAGA claims are arbitable. *See Valdez v. Terminix Int'l Co. Ltd. P'ship*, No. 15-56236, 2017 WL 836085, at *1 (9th Cir. Mar. 3, 2017) ("[*Iskanian v. CLS Transp. Los Angeles, LLC*, 59 Cal.4th 348, 173 Cal.Rptr.3d 289, 327 P.3d 129 (2014)] and [*Sakkab v. Luxottica Retail N. Am., Inc*., 803 F.3d 425 (9th Cir. 2015)] clearly contemplate that an individual employee can pursue a PAGA claim in arbitration, and thus that individual employees can bind the state to an arbitral forum.").

Finally, the fourth issue –class action waiver– was also resolved when PPF conceded that it was not contending that any of the three Plaintiffs in this case signed an arbitration

agreement containing class action waiver language. (ECF No. 18, p. 6.)  All parties agreed that, to the extent arbitration is compelled, the arbitration would include the class claims.

Therefore, the remaining issue is the first issue: whether all three Plaintiffs signed the arbitration agreement.  More specifically, the parties dispute whether Plaintiff Villarreal signed the arbitration agreement.

### III.     APPLICABLE LAW

#### A. Federal Arbitration Act (FAA) vs. California Arbitration Act (CAA)

PPF has filed its motion to compel arbitration pursuant to the FAA.  If a party to an arbitration agreement files a case in the district court that is covered by the agreement to arbitrate, the FAA permits the aggrieved party to file a motion to compel arbitration pursuant to their agreement. *See* 9 U.S.C. § 4.

However, there is a dispute between the parties as to whether the claims are arbitrable in the first place (i.e. the arbitrability question) is governed by the FAA or the CAA.  The statutory language of the FAA provides that it applies to a "contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction." 9 U.S.C. § 2.  The language "involving commerce" in the FAA has been interpreted to mean "the functional equivalent of the more familiar term 'affecting commerce'- words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56, 123 S. Ct. 2037, 2040, 156 L. Ed. 2d 46 (2003) (citing *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273-74, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995)).  Therefore, absent a clear and unmistakable designated intent that nonfederal arbitrability law applies, "federal law governs the arbitrability question by default because the Agreement is covered by the FAA." *Brennan v. Opus Bank*, 796 F.3d 1125, 1129 (9th Cir. 2015) (citing *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985); *Cape Flattery Ltd. v. Titan Maritime*, 647 F.3d 914, 921 (9th Cir. 2011)).

Plaintiffs contend that the FAA does not control because there are clauses in the relevant documents in this case that state that the CAA governs. (ECF No. 17, p. 8.) Specifically, the "Arbitration" section of the Employee Handbook states:

> …
> Pursuant to the Agreement to Arbitrate Employment Disputes, the parties voluntarily agree that the Agreement to Arbitrate Employment Disputes and any arbitration proceeding therefrom shall be governed by the California Arbitration Act (California Code of Civil Procedure Section 1280, et seq.)
> …
> The appointed arbitrator shall conduct the arbitration proceedings pursuant to California Code of Civil Procedure Section 1282, et seq. This includes the right to conduct discovery as allowed by the arbitrator.
> …

(ECF 14-4, p. 7.)

Next, the Agreement to Arbitrate Employment Disputes provides that the "arbitrator shall conduct the arbitration proceedings pursuant to the California Arbitration Act. This includes the right to conduct discovery as allowed by the arbitrator." (ECF 14-4, p. 17.)

In reconciling these two documents, it is worth pointing out that the Employee Handbook section describing PPF's arbitration policy specifically defers to the Agreement to Arbitrate Employment Disputes. (ECF 14-4, p. 7 ("Pursuant to the Agreement to Arbitrate Employment Disputes…")). Thus, the Court looks to the four corners of the Agreement to Arbitrate Employment Disputes to determine whether the parties clearly and unmistakably designated intent for nonfederal arbitrability law to apply. *See Gerdlund v. Elec. Dispensers Int'l*, 190 Cal. App. 3d 263, 270, 235 Cal. Rptr. 279, 282 (Ct. App. 1987) ("The parol evidence rule generally prohibits the introduction of any extrinsic evidence to vary or contradict the terms of an integrated written instrument."). That agreement states that California law is to be applied by the arbitrator to disputes that are subject to arbitration, but it is silent as to whether California law also applies to determine whether a given dispute is arbitrable in the first place. Given this silence, federal law must be applied here by default to determine arbitrability. *See, e.g., Cape Flattery*, 647 F.3d at 921 (Federal arbitrability law, rather than English law, applied in determining whether boat owner and salvage company had agreed to arbitrate arbitrability of

dispute, where agreement was ambiguous concerning whether English law also applied to determine whether a given dispute was arbitrable in the first place).

### B. Effect of Federal Arbitration Act

Where the FAA is applicable, as it is here, the U.S. Court of Appeals for the Ninth Circuit has summarized its impact on interpretation and enforcement of arbitration agreements as follows:

> The Federal Arbitration Act (FAA) requires courts to "place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339, 131 S.Ct. 1740, 179 L.Ed.2d 742 (2011) (internal citation omitted). Section 2 of the FAA makes agreements to arbitrate "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The final clause of § 2, generally referred to as the savings clause, "permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Concepcion*, 563 U.S. at 339, 131 S.Ct. 1740 (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996)). "Any doubts about the scope of arbitrable issues, including applicable contract defenses, are to be resolved in favor of arbitration." *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1022 (9th Cir. 2016).
>
> Section 2 of the FAA preempts state statutes and state common law principles that "undercut the enforceability of arbitration agreements," unless the savings clause applies. *Southland Corp. v. Keating*, 465 U.S. 1, 16, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984); *see also Concepcion*, 563 U.S. at 343–44, 131 S.Ct. 1740; *Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425, 432 (9th Cir. 2015). In other words, a court cannot enforce state laws that apply to agreements to arbitrate but not to contracts more generally. *See Mortensen v. Bresnan Commc'ns, LLC*, 722 F.3d 1151, 1159 (9th Cir. 2013) ("Any general state-law contract defense ... that has a disproportionate effect on arbitration is displaced by the FAA.").

*Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1259–60 (9th Cir. 2017).

### C. Legal Standard

"Generally, in deciding whether to compel arbitration, a court must determine two 'gateway' issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan*, 796 F.3d at 1130 (citing *Howsam v. Dean*

*Witter Reynolds, Inc.*, 537 U.S. 79, 84, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002)). The party moving to compel arbitration bears the burden of demonstrating that these two elements are satisfied. *Ashbey v. Archstone Prop. Mgmt., Inc*., 785 F.3d 1320, 1323 (9th Cir. 2015) (citing *Cox v. Ocean View Hotel Corp*., 533 F.3d 1114, 1119 (9th Cir. 2008)). Agreements to arbitrate may be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability. *See* 9 U.S.C. § 2. *See also Concepcion*, 563 U.S. at 339, 131 S. Ct. at 1746.

Arbitration is a creation of contract, and a court will not grant a motion to compel arbitration unless it finds that there is a "clear agreement" to arbitrate. *Davis v. Nordstrom, Inc.*, 755 F.3d 1089, 1092-93 (9th Cir. 2014) (citations omitted). "When determining whether a valid contract to arbitrate exists, we apply ordinary state law principles that govern contract formation." *Id*. at 1093 (citing *Ferguson v. Countrywide Credit Indus., Inc*., 298 F.3d 778, 782 (9th Cir. 2002)). "In California, a 'clear agreement' to arbitrate may be either express or implied in fact." *Id*. (citing *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (U.S.), LLC*, 55 Cal.4th 223, 236, 145 Cal.Rptr.3d 514, 282 P.3d 1217 (Cal. 2012)). "A party's acceptance of an agreement to arbitrate may be express, as where a party signs the agreement." *Pinnacle*, 55 Cal. 4th at 236, 282 P.3d at 1224. Acceptance of an agreement to arbitrate is implied-in-fact where the conduct of the contracting parties suggests such acceptance. *See Craig v. Brown & Root, Inc*., 84 Cal. App. 4th 416, 420, 100 Cal. Rptr. 2d 818, 820 (2000) (employee's continued employment constitutes her acceptance of an agreement proposed by her employer).

In resolving a motion to compel arbitration, the court applies a standard similar to that of a motion for summary judgment brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See Smith v. H.F.D. No. 55, Inc*., No. 2:15cv1293-KJM-KJN, 2016 WL 881134, at *4 (E.D. Cal. Mar. 8, 2016) (citations omitted). "The party opposing arbitration receives the benefit of any reasonable doubts and the court draws reasonable inferences in that party's favor, and only when no genuine disputes of material fact surround the arbitration agreement's existence and applicability may the court compel arbitration." *Smith*, 2016 WL 881134, at *4 (citing *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co*., 925 F.2d 1136, 1141 (9th Cir.

1991)).

Rule 56 does not require that the absence of any factual dispute. *See Hanon v. Dataproducts Corp.*, 976 F.2d 497, 500 (9th Cir. 1992). Rather, there must be no *genuine* issue of *material* fact. *Id.* (emphasis as in original) (quoting *Anderson v. Liberty Lobby, In*c., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986)). "A material fact is genuine if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Id.* (quoting *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510). "Conversely, '[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' " *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

## IV. DISCUSSION

The Court will now address each of the gateway questions: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute. As summarized in Part II, above, the remaining dispute is whether Plaintiff Villarreal signed the arbitration agreement in light of the fact that PPF failed to locate the signature page to the agreement.

### A. Whether there is an agreement to arbitrate between the parties.

Plaintiffs' argument concerning contract formation focuses only upon Plaintiff Villarreal, and no argument is advanced concerning Plaintiffs Benitez or Morales.[1] Plaintiff argues that there is no express agreement to arbitrate as to Villarreal because PPF did not submit a signed copy of an arbitration agreement between Villarreal and PPF to its motion. (ECF No. 17, pp. 10-11.) PPF attached to its motion a copy of what purports to be a copy of the front page of an arbitration agreement between PPF and Villarreal. (ECF No. 14-4, p. 23.) PPF further submitted the declaration of its Vice President of Human Resources, Aubrey Michael, in support of its motion. (ECF No. 14-4, pp. 1-3.) Michael explains that the PPF-

---

[1] The Court will construe this as a concession as to Benitez and Morales as to the contract formation argument.

Villarreal arbitration agreement was double-sided, and that due to clerical error, only one side was scanned into PPF's files. (*Id*. at 3 ¶ 9.) As a result, PPF does not have and did not submit a copy of the signed PPF-Villarreal arbitration agreement.

Villarreal has submitted his declaration attesting that he reviewed the front page of the arbitration agreement attached to PPF's motion, and he does not "recall" seeing the document prior to February 2017 or signing an arbitration agreement with PPF. (ECF No. 17-2, p. 2 ¶ 3-4). Villarreal affirms that he originally began employment with PPF through a temporary staffing agency in February 2013, and then began working directly with PPF September 2014. (*Id*. ¶ 6.) When he began direct employment with PPF, he recalls an orientation with PPF employee Erin Kelly, wherein Villarreal signed/dated various double-sided documents. (*Id*. ¶¶ 6, 8.) At the conclusion of the orientation, Villarreal was provided with a copy of the documents he signed, but he did not receive a copy of an arbitration agreement. (*Id*. ¶¶ 9.) Therefore, Plaintiffs argue that PPF has not met its burden of establishing that there was an express or implied-in-fact PPF-Villarreal agreement to arbitrate.

PPF has come forward with evidence of its employment policies suggesting that it is its regular business practice to enter into arbitration agreements with its employees. PPF's Vice President of Human Resources, Ms. Michael, attests that she has responsibility for instituting and enforcing PPF's employment-related policies and procedures, and that it has always been the policy of PPF to resolve employment disputes through binding arbitration. (*Id*., pp. 1-2 ¶¶ 3-4.) With respect to the three Plaintiffs in this case, Michael confirms that they are former PPF employees, and that copies of the documents they signed upon being hired by PPF (Exhibits B-D to the motion) are true and correct copies of documents in their respective personnel files. (*Id*., ¶¶ 5-8.)

PPF submits the complete, signed arbitration agreements for Plaintiffs Benitez and Morales. (ECF No. 14-4, pp. 17-21.) The first page of the Benitez and Morales arbitration agreements appear to be identical to the first page of the arbitration agreement that PPF suggests Villarreal signed. (*See id*. at 17, 20, 23.) All three documents contain the same documents version number (Rev. 7/1/12). (*Id*.) This evidence gives weight to PPF's assertion

that Villarreal's arbitration agreement signature page was lost due to clerical error and also gives weight to the assertion that it is PPF's regular business practice to enter into arbitration agreements with its employees.[2]

In addition, PPF submitted a copy of a "New Hire Checklist" pertaining to Villarreal. (ECF No. 14-4, p. 25.) This document contains a series of checkboxes next to various items that would be relevant to a person's employment with PPF, such as "offer letter", "employee information form", "application", etc. (*Id*.) One of the checked items is "Agreement to Arbitrate Employment Disputes." (*Id*.) Michael asserts that under PPF's "general procedures," the checkbox "would not have been checked had Villarreal not reviewed and signed the Agreement to Arbitrate Employment Disputes."[3] (*Id*. at 3 ¶ 9.)

PPF also submits evidence suggesting Villarreal was likely aware that it was PPF's employment policy to resolve employment-related disputes with binding arbitration. PPF has attached a copy of the title page, a page from the table of contents, and pages describing its arbitration policy contained in its Employee Handbook. (ECF No. 14-4, pp. 5-9.) It is not disputed that all three Plaintiffs signed a copy of the same version (Rev. 7/1/12) of PPF's Employee Handbook Acknowledgement form: 1) Villarreal on September 14, 2014 (*Id*. at 11); 2) Morales on September 16, 2014 (*Id*. at 13); and 3) Benitez on August 14, 2012 (*Id*. at 15). The table of contents page contains an entry for "arbitration." (*Id*. at 5.) The three pages that describe how the arbitration process works are labeled with the same version number (Rev. 7/1/12) as the Employee Handbook Acknowledgement forms that Plaintiffs all signed. (*Id*. at 7-9, 11, 13, 15.)

---

[2] PPF attached more documents to its reply in support of its motion to compel arbitration. (ECF No. 18-1.) These exhibits consist of various employment-related documents concerning Villarreal. Each document contains Villarreal's handwritten name. Michael attests that Villarreal, himself, would have printed his name on each of these documents. (*Id*. at 2 ¶ 6.) Michael then states that she compared the handwriting on these documents to the front page of the Agreement to Arbitrate Employment Disputes to confirm that Villarreal signed the arbitration agreement. (*Id*. at 2 ¶ 7.) Due to the questionable admissibility of these statements regarding a handwriting comparison, the Court did not consider this evidence in reaching its conclusion.

[3] While Michael lacks personal knowledge as to whether Villarreal actually reviewed the arbitration agreement, she can competently testify as to PPF's employment procedures.

After consideration of all of the admissible evidence, the Court finds no genuine issue of material fact that all three Plaintiffs agreed to an arbitrate employment disputes with PPF. While the evidence did not include a signed copy of the PPF-Villarreal arbitration agreement, PPF provided sufficient circumstantial evidence that such an agreement existed. The Court also acknowledges that Villarreal has provided testimony that he does not recall signing the arbitration agreement and did not receive a copy of an agreement from PPF. However, Villarreal's testimony does *not* affirmatively discount the possibility that he may have signed an arbitration agreement with PPF upon commencement of his employment and does not recall that specific document.[4] Moreover, Villarreal's declaration does *not* say that he contested arbitration, remembers refusing to sign such an agreement, or otherwise diverged from the ordinary hiring procedures.

The evidence further demonstrates that it was in fact PPF's regular business practice at the time Villarreal was hired to enter into arbitration agreements with its employees. Indeed, even Plaintiff admits, in connection with its argument on procedural unconsionability that employees were "required to consent to arbitration as a condition of employment with no opportunity to negotiate . . . ." (ECF No. 17, p. 12.) The Court is persuaded that Villarreal would have been aware at the time he entered into a direct employment relationship with PPF that the company had a policy of resolving employment disputes with binding arbitration. The Employee Handbook contained information regarding PPF's arbitration policy, and Villarreal signed the Employee Handbook Acknowledgment form. (ECF No. 14-4, p. 11.)

The record taken as whole could not lead a rational trier of fact to find that Villarreal did not agree to arbitrate employment disputes with PPF. Accordingly, the undersigned FINDS that there was a clear agreement to arbitrate between PPF and all three Plaintiffs.

### B. Whether the agreement covers the dispute.

The second gateway question that the Court must decide is whether the arbitration agreement covers the dispute in this case. *See Brennan*, 796 F.3d at 1130. The First Amended

---

[4] The Court has made no credibility assessments in reaching its conclusion.

Complaint contains five class claims, a PAGA claim, and an individual claim brought by Villarreal for interference of rights under the Family Medical Leave Act. (ECF No. 11.) All claims arise from Plaintiffs' employment relationship with PPF. (*See id*.)

The three Plaintiffs in this case signed the same version (Rev. 7/1/12) of an arbitration agreement with PPF. (ECF No. 14-4, pp. 17, 20, 23.) That arbitration agreement provides as follows:

> 1. [Employee] and [the Company] agree to the resolution by binding arbitration of all claims between them. This agreement covers all claims or causes of action the Company may have against Employee, or that Employee may have against Company, its officers, directors, employees, agents, subsidiaries, affiliates, successors, and assigns, whether based in tort, contract, statutory, or equitable law, or otherwise. The only claims excluded by this Agreement are claims that Employee may have for workers' compensation and/or unemployment insurance benefits. In addition, this Agreement shall not be interpreted to restrict the Parties' rights to seek provisional injunctive relief in an appropriate forum.

(*Id*. at 20.)

Because it is clear that all claims in the First Amended Complaint arose from Plaintiffs' employment with PPF, the Court FINDS that the agreed-upon arbitration agreement in this case covers the dispute.

### C. Final disposition.

Because both of the gateway questions have been answered in the affirmative, the Court should enforce the agreement between the parties and grant the motion to compel arbitration. *See* 9 U.S.C. § 3; *Tillman v. Tillman*, 825 F.3d 1069, 1073 (9th Cir. 2016) ("When a party petitions a court to compel arbitration under the FAA, 'the district court's role is limited to determining whether a valid arbitration agreement exists and, if so, whether the agreement encompasses the dispute at issue. If the answer is yes to both questions, the court must enforce the agreement.' [*Lifescan, Inc. v. Premier Diabetic Servs., Inc*., 363 F.3d 1010, 1012 (9th Cir. 2004)].").

When a court finds that a motion to compel arbitration should be granted, the FAA provides that a court may stay the trial of the action upon application of one of the parties until

the arbitration proceedings are complete. *See* 9 U.S.C. § 3. Notwithstanding § 3, the Court also has authority to grant a dismissal where a court summarily finds that all claims are barred by an arbitration clause. *See Sparling v. Hoffman Const. Co*., 864 F.2d 635, 638 (9th Cir. 1988) (providing that a district court acted within its discretion when it dismissed, rather than stayed, claims that were contractually required to be submitted to arbitration). *See also Johnmohammadi v. Bloomingdale's, Inc*., 755 F.3d 1072, 1073–74 (9th Cir. 2014) (providing that, notwithstanding the language of § 3, a district court may either stay the action or dismiss it outright when it determines that all of the claims raised in the action are subject to arbitration and citing *Sparling*, 864 F.2d at 638).

Here, like in *Sparling*, dismissal is appropriate because all claims are barred from proceeding in this Court due to the parties' agreement to arbitrate employment disputes.

### V. CONCLUSION

Accordingly, the Court RECOMMENDS that:

1. Defendant's motion to compel arbitration (ECF No. 14) be GRANTED;

2. This case be REMANDED for arbitration;

3. This case be DISMISSED; and

4. The Clerk of Court be DIRECTED to CLOSE this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the Court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten (10) days after service of the objections.

\\\

\\\

The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **April 10, 2017**

/s/ *[signature]*
UNITED STATES MAGISTRATE JUDGE